# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————X

KAILASH C. SINGHVI, M.D.

        Plaintiff,

   -against-

THE INSPECTOR GENERAL DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

        Defendant.
————————————————————X

FEUERSTEIN, J.

**ORDER**
**CV-08-0659 (SJF)**

    Kailash C. Singhvi ("plaintiff") commenced this action pursuant to, *inter alia*, Section 1128(f)(1) of the Social Security Act ("the Act"), 42 U.S.C. § 1320a-7(f)(1), seeking judicial review of the final decision of the Secretary of Health and Human Services ("the Secretary"), i/s/h as the Inspector General, Department of Health and Human Services, that excluded plaintiff from participating in Medicare, Medicaid and all other federal health care programs for a period of five (5) years, effective January 18, 2007. The Secretary now moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. For the reasons set forth below, the Secretary's motion is granted.

I.    BACKGROUND

   A.    Administrative Proceedings

Plaintiff is a physician specializing in gastroenterology. (Complaint [Compl.], ¶ 3).

On August 27, 2001, plaintiff pled guilty in the United States District Court, Southern

1

District of New York, to one (1) count of defrauding the Medicare program in violation of 18 U.S.C. § 1347, one (1) count of paying kickbacks to doctors for Medicare patient referrals in violation of 18 U.S.C. § 1320a-7b(b)2 and two (2) counts of conspiracy to commit those offenses in violation of 18 U.S.C. § 371. ("Administrative Record Before the Department of Health and Human Services Departmental Appeal Board" [R.] 68-87). During the plea allocution, plaintiff admitted, *inter alia*: (1) that from 1984 until 2000, he "knowingly and intentionally" agreed with others to pay, and did pay, kickbacks to doctors in order to receive Medicare patient referrals from them; and (2) that from 1996 to 1999, he "knowingly and intentionally" agreed with others to commit, and did commit, health care fraud by devising a scheme to submit false bills to health care benefit programs. (R. 83-84). As part of the plea agreement, plaintiff surrendered his licenses to practice medicine in the states of New York, New Jersey and Texas. (R. 85).

On April 19, 2006, plaintiff was sentenced to time served and payment of fines and assessments in the amount of five thousand four hundred dollars ($5,400.00), and was ordered to forfeit one million six hundred and five thousand dollars ($1,605,000.00) in restitution. (R. 49-56, 89-99, 103-110). The lenient sentence of time served was due, in part, to plaintiff's cooperation with the government, which resulted in the indictments and convictions of at least three (3) other physicians, and his community service. (Compl., ¶¶ 21-23).

On December 29, 2006, the Office of the Inspector General of the Department of Health and Human Services ("OIG") notified plaintiff that, pursuant to Section 1128(a)(1) of the Act, as a result of his conviction he would be excluded from participating in Medicare, Medicaid and all federal health care programs for the minimum statutory period of five (5) years, effective January 18, 2007. (R. 18-20). According to William J. Hughes, the reviewing official for the Office of

2

Counsel of the Inspector General, at all relevant times it was the policy of the OIG to impose an exclusion under Section 1128(a)(1) of the Act only after an individual has been sentenced, or the individual's case has otherwise been resolved at the trial level, in order to account for specific aggravating and/or mitigating factors. (Declaration of William J. Hughes [Hughes Decl.], R. 100-101). Hughes maintains that plaintiff's exclusion was imposed following his sentencing on April 19, 2006 in accordance with that OIG policy. (Hughes Decl., R. 101).

Although plaintiff conceded at the administrative level that the crimes of which he was convicted triggered the imposition of the minimum mandatory five (5) year period of exclusion under Section 1128(a)(1) of the Act, he challenged the OIG's five (5) year delay in imposing the exclusion as unreasonable and arbitrary. (R. 113-119).

By decision dated August 2, 2007, Administrative Law Judge Jose A. Anglada ("the ALJ") sustained the determination of the OIG to exclude plaintiff from federal health care programs, finding that the implementing regulations at 42 C.F.R. Parts 1001 and 1005 did not grant him the authority to set aside an exclusion on the grounds of fairness or untimeliness. (R. 1-5).

By decision dated December 19, 2007, the Department of Health and Human Services, Departmental Appeals Board ("the DAB") affirmed the ALJ's decision. (R. 6-15). Pursuant to 42 C.F.R. § 1005.21(j), the DAB's decision became the final decision of the Secretary sixty (60) days after the date it was served upon plaintiff.


B.    Procedural History

On February 15, 2008, plaintiff commenced this action pursuant to Sections 205(g) and

3

1128(f)(1) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1320a-7(f)(1), respectively, and 42 C.F.R. § 1005.21(k)(1), seeking judicial review of the final decision of the Secretary. Plaintiff contends, *inter alia*, that the five (5) year delay in imposing the exclusion was unreasonable, inequitable, arbitrary and against the legislative intent of the Medicare program and public policy. Plaintiff seeks to invalidate or set aside the exclusion on the grounds: (1) that the Secretary did not provide him with notice of the exclusion within a reasonable time; (2) that the exclusion is barred by the doctrine of laches; (3) that the substantive content of the notice of exclusion was unreasonable[1]; (4) that the exclusion, and the federal statutes and regulations on which it is based, violate his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution; (5) that the exclusion is not based on substantial evidence and is otherwise arbitrary and capricious; and (6) that to the extent the decision to exclude plaintiff was an unexplained departure from the Secretary's precedent, the exclusion is prohibited by federal law, including the Administrative Procedures Act[2].

## II.    DISCUSSION

---

[1] Plaintiff does not otherwise expand on this claim in either the pleadings or his opposition to the Secretary's motion for judgment on the pleadings. Accordingly, plaintiff has abandoned this claim. In any event, it is clear that the notice of exclusion complied with the requirements of the Act and implementing regulations. See 42 U.S.C. § 1320a-7(c)(3); 42 C.F.R. §§ 1001.2001(a) and 1001.2002(c).

[2] Plaintiff has not demonstrated that the decision to exclude him was a departure from the Secretary's precedent. Indeed, plaintiff does not refute the Secretary's showing that he was excluded pursuant to the OIG's policy to impose an exclusion under Section 1128(a)(1) of the Act only after an individual has been sentenced, or the individual's case has otherwise been resolved at the trial level, in order to account for specific aggravating and/or mitigating factors. (Hughes Decl., R. 100-101). Accordingly, this claim is without merit.

4

A.   Applicable Statutory Provisions and Implementing Regulations

   1.   Basis for, and Length of, Exclusion

Section 1128 (a)(1) of the Act mandates that the Secretary exclude from participation in any federal health care program "[a]ny individual or entity that has been convicted[3] of a criminal offense related to the delivery of an item or service under [the Medicare, Medicaid or other Federal health care program] or under any State health care program." 42 U.S.C. § 1320a-7(a)(1); see also 42 C.F.R. § 1001.101.[4]  Plaintiff does not dispute that he was convicted of a criminal offense "related to the delivery of an item or service" under the Medicare program, thus triggering the mandatory exclusion provided by Section 1128(a)(1) of the Act.

Section 1128(c) of the Act pertains to the notice, effective date, and period of exclusion and provides, in relevant part, as follows:

---

[3]  "Convicted" is defined in the statute, in relevant part, as follows:

> "[A]n individual or entity is considered to have been "convicted" of a criminal offense--
> (1) when a judgment of conviction has been entered against the individual or entity by a Federal, State, or local court, regardless of whether there is an appeal pending or whether the judgment of conviction or other record relating to criminal conduct has been expunged; [or] * * * (3) when a plea of guilty or nolo contendere by the individual or entity has been accepted by a Federal, State, or local court; * * *. 42 U.S.C. § 1320a-7(i).

[4]  A health care provider who is excluded pursuant to Section 1128(a)(1) of the Act may not receive any payment "by Medicare, Medicaid or any of the other Federal health care programs for any item or service furnished, on or after the effective date specified in the notice period, * * *;" "may not take assignment of an enrollee's claim on or after the effective date of exclusion;" and may be "subject to civil money penalty liability under section 1128A(a)(1)(D) of the Act, and criminal liability under section 1128B(a)(3) of the Act and other provisions," if he or she "submits, or causes to be submitted, claims for items or services furnished during the exclusion period." 42 C.F.R. § 1001.1901(b).

5

"(1) An exclusion under this section * * * shall be effective *at such time and upon such reasonable notice to the public and to the individual or entity excluded as may be specified in regulations* consistent with paragraph (2).

* * *

(3)(A) The Secretary shall specify, in the notice of exclusion under paragraph (1) and the written notice under section 1320a-7a of this title, the minimum period * * * of the exclusion. (B) * * *, in the case of an exclusion under subsection (a) of this section, the minimum period of exclusion shall be not less than five years, * * *."

42 U.S.C. § 1320a-7(c) (emphasis added). The Act delegates to the Secretary the authority to promulgate regulations, see 42 U.S.C. § 1320a-7(c)(1), which are set forth in 42 C.F.R. § 1001.1, *et seq.*

42 C.F.R. § 1001.1 defines the scope and purpose of the Secretary's implementing regulations as follows:

"(a) The regulations in this part specify certain bases upon which individuals and entities may, or in some cases must, be excluded from participation in Medicare, Medicaid and all other Federal health care programs. They also state the effect of exclusion, the factors that will be considered in determining the length of any exclusion, the provisions governing notices of exclusions, and the process by which an excluded individual or entity may seek reinstatement into the programs.

(b) The regulations in this part are applicable to and binding on the Office of Inspector General (OIG) in imposing and proposing exclusions, as well as to Administrative Law Judges (ALJs), the Departmental Appeals Board (DAB), and federal courts in reviewing the imposition of exclusions by the OIG (and, where applicable, in imposing exclusions proposed by the OIG)."

42 C.F.R. § 1001.102 reiterates the minimum five (5) year period for exclusions, see 42 C.F.R. § 1001.102(a). In addition, the implementing regulations provide that an exclusion for more than the five (5) year period may be imposed if certain aggravating factors, as set forth in

6

42 C.F.R. § 1001.102(b), are present.  Those aggravating factors include:

> "(1) The acts resulting in the conviction, or similar acts, that caused, or were intended to cause, a financial loss to a Government program or to one or more entities of $5,000 or more. (The entire amount of financial loss to such programs or entities, including any amounts resulting from similar acts not adjudicated, will be considered regardless of whether full or partial restitution has been made); (2) The acts that resulted in the conviction, or similar acts, were committed over a period of one year or more; * * * (5) The sentence imposed by the court included incarceration; * * * or (9) Whether the individual or entity was convicted of other offenses besides those which formed the basis for the exclusion, or has been the subject of any other adverse action by any Federal, State or local government agency or board, if the adverse action is based on the same set of circumstances that serves as the basis for imposition of the exclusion."

42 C.F.R. § 1001.102(b).

If one or more of those aggravating factors are present, certain mitigating factors, as set forth in 42 C.F.R. § 1001.102(c), may be considered to reduce the exclusion period, but in no event may the exclusion period be reduced to less than the minimum statutory period of five (5) years.  Id.  Those mitigating factors include:

> "(2) The record in the criminal proceedings, including sentencing documents, demonstrates that the court determined that the individual had a mental, emotional or physical condition before or during the commission of the offense that reduced the individual's culpability; or (3) The individual's or entity's cooperation with Federal or State officials resulted in-- (i) Others being convicted or excluded from Medicare, Medicaid and all other Federal health care programs, (ii) Additional cases being investigated or reports being issued by the appropriate law enforcement agency identifying program vulnerabilities or weaknesses, or (iii) The imposition against anyone of a civil money penalty or assessment under part 1003 of this chapter."

42 C.F.R. § 1001.102(c).

    2.    Procedure for Exclusions

Section 1128(f)(1) of the Act provides, in relevant part, as follows:

"Subject to paragraph (2), any individual or entity that is excluded (or directed to be excluded) from participation under this section is entitled to reasonable notice and opportunity for a hearing thereon by the Secretary * * *, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)[5] of this title, except that, in so applying such section[], any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively."

42 U.S.C. § 1320a-7(f)(1).

42 C.F.R. § 1001.2001(a) provides, in relevant part, that, with exceptions not relevant here:

"if the OIG proposes to exclude an individual or entity * * *, it will send written notice of its intent, the basis for the proposed exclusion and the potential effect of an exclusion. Within 30 days of receipt of notice, which will be deemed to be 5 days after the date on the notice, the individual or entity may submit documentary evidence and written argument concerning whether the exclusion is warranted and any related issues."

42 C.F.R. § 1001.2002 provides, in relevant part, as follows:

"(a) Except as provided in § 1001.2003, if the OIG determines that exclusion is warranted, it will send a written notice of this decision to the affected individual or entity.

---

[5]  42 U.S.C. § 405 (g) provides, in relevant part:

"Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow. * * *. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing. The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

8

(b) The exclusion will be effective 20 days from the date of the notice.

(c) The written notice will state--(1) The basis for the exclusion; (2) The length of the exclusion and, where applicable, the factors considered in setting the length; (3) The effect of the exclusion; (4) The earliest date on which the OIG will consider a request for reinstatement; (5) The requirements and procedures for reinstatement; and (6) The appeal rights available to the excluded individual or entity. * * *."

42 C.F.R. § 1001.2007 provides, in relevant part, as follows:

"(a)(1) Except as provided in § 1001.2003, an individual or entity excluded under this Part may file a request for a hearing before an ALJ only on the issues of whether: (i) The basis for the imposition of the sanction exists, and (ii) The length of exclusion is unreasonable. (2) When the OIG imposes an exclusion under subpart B of this part for a period of 5 years, paragraph (a)(1)(ii) of this section will not apply.

(b) The excluded individual or entity has 60 days from the receipt of notice of exclusion provided for in § 1001.2002 to file a request for such a hearing.

* * *

(d) When the exclusion is based on the existence of a criminal conviction or a civil judgment imposing liability by Federal, State or local court, a determination by another Government agency, or any other prior determination where the facts were adjudicated and a final decision was made, the basis for the underlying conviction, civil judgment or determination is not reviewable and the individual or entity may not collaterally attack it either on substantive or procedural grounds in this appeal.

(e) The procedures in part 1005 of this chapter will apply to the appeal."

See also 42 C.F.R. § 1005.2(a)-(d).

42 C.F.R. Part 1005 provides the procedure for appeals of exclusions. 42 C.F.R. § 1005.4(a) provides that "[t]he ALJ will conduct a fair and impartial hearing, avoid delay, maintain order and assure that a record of the proceeding is made." 42 C.F.R. § 1005.4(b)

9

provides that the ALJ has the authority to: set the date, time, place and manner of the hearing upon reasonable notice to the parties; continue or recess the hearing for a reasonable period of time; hold conferences; administer oaths and affirmations; issue subpoenas; rule on motions and other procedural matters; regulate documentary discovery; regulate the course of the hearing; examine witnesses; admit or exclude evidence; take official notice of facts, upon motion of any party; and rule on any motion for summary judgment where there is no disputed issue of material fact. 42 C.F.R. § 1005.4(c) limits the authority of the ALJ and provides that the ALJ does not have the authority to, *inter alia*, refuse to follow federal statutes or regulations or secretarial delegations of authority.

42 C.F.R. § 1005.20 provides, in relevant part, as follows:

"(a) The ALJ will issue an initial decision, based only on the record, which will contain findings of fact and conclusions of law.

(b) The ALJ may affirm, increase or reduce the penalties, assessment or exclusion proposed or imposed by the IG, or reverse the imposition of the exclusion. * * *

(c) The ALJ will issue the initial decision to all parties within 60 days after the time for submission of post-hearing briefs and reply briefs, if permitted, has expired. The decision will be accompanied by a statement describing the right of any party to file a notice of appeal with the DAB and instructions for how to file such appeal. * * *."

42 C.F.R. § 1005.21 provides the procedure for appeals to the DAB from the ALJ's decision and states, in relevant part, as follows:

"(a) Any party may appeal the initial decision of the ALJ to the DAB by filing a notice of appeal with the DAB within 30 days of the date of service of the initial decision. * * *.

* * *

10

(g) The DAB may decline to review the case, or may affirm, increase, reduce, reverse or remand any penalty, assessment or exclusion determined by the ALJ.

(h) The standard of review on a disputed issue of fact is whether the initial decision is supported by substantial evidence on the whole record. The standard of review on a disputed issue of law is whether the initial decision is erroneous.

(i) Within 60 days after the time for submission of briefs and reply briefs, if permitted, has expired, the DAB will issue to each party to the appeal a copy of the DAB's decision and a statement describing the right of any petitioner or respondent who is found liable to seek judicial review.

(j) Except with respect to any penalty, assessment or exclusion remanded by the ALJ, the DAB's decision, including a decision to decline review of the initial decision, becomes final and binding 60 days after the date on which the DAB serves the parties with a copy of the decision. If service is by mail, the date of service will be deemed to be 5 days from the date of mailing.

(k)(1) Any petition for judicial review must be filed within 60 days after the DAB serves the parties with a copy of the decision. If service is by mail, the date of service will be deemed to be 5 days from the date of mailing."

B.      Standard of Judicial Review

The standard of review of the Secretary's final decision to exclude a health care provider from participation in Medicare, Medicaid or other federal health care program is governed by 42 U.S.C. § 1320a-7(f)(1), which incorporates the standard of review set forth in 42 U.S.C. § 405(g). That standard of review is whether the Secretary's determination is supported by substantial evidence in the record as a whole or is based on an erroneous legal standard. See Kahn v. Inspector General of U.S. Dept. of Health and Human Services, 848 F. Supp. 432, 436 (S.D.N.Y. 1994); 42 U.S.C. § 405(g); see also Friedman v. Secretary of Dept. of Health and Human Services, 819 F.2d 42, 44 (2d Cir. 1987) (holding that the Secretary's findings must be

11

upheld if a reasonable mind, viewing the record evidence as a whole, could accept it as adequate to support the Secretary's conclusion). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

C.    Analysis[6]

1.    "Substantial Evidence" and "Arbitrary and Capricious" Claims

The Secretary's determination to exclude plaintiff pursuant to Section 1128(a)(1) of the Act was supported by a criminal conviction, upon plaintiff's plea of guilty, to defrauding the Medicare program, paying kickbacks to doctors for Medicare patient referrals, and conspiracy to commit those offenses. Plaintiff does not dispute that he was convicted of a criminal offense(s) "related to the delivery of an item or service" under the Medicare program, which triggered the mandatory five (5) year exclusion period of Section 1128(a)(1) of the Act. Thus, the Secretary had no discretion under the Act and implementing regulations but to impose an exclusion for a period of five (5) years. However, the Act and implementing regulations afford the OIG discretion to determine when to impose the exclusion. See 42 U.S.C. §§ 1320a-7(c)(1) and

---

[6] Plaintiff's opposition to the Secretary's motion rests entirely upon conclusory assertions of public policy and perceived legislative intent without citation to any legal authorities. Indeed, plaintiff admittedly raises his equitable arguments "[i]n spite of [the] numerous citations [and] federal cases" supporting the Secretary's motion for judgment on the pleadings. ("Plaintiff's Response in Opposition [Plf. Opp.], ¶ 1). Moreover, although plaintiff claims that his situation is "unique," (Plf. Opp., ¶ 2), at least two other courts have addressed similar claims, see Connell v. Secretary of Health and Human Services, No. 05-cv-4122, 2007 WL 1266575, at * 4 (S.D.Ill. Apr. 30, 2007); Seide v. Shalala, 31 F.Supp.2d 466, 469 (E.D.Pa. 1998), albeit with inconsistent conclusions.

12

(f)(1); 42 C.F.R. §§ 1001.2001-1001.2002.

Contrary to plaintiff's contention, the fact that the Act defines "conviction" to run from the time that "a judgment of conviction has been entered against the individual" or "when a plea of guilty * * * has been accepted," 42 U.S.C. § 1320a-7(i), does not affect the Secretary's discretion to determine when to impose the exclusion under Section 1128(c)(1) of the Act and the implementing regulations.[7] Since the timing of plaintiff's exclusion was in accordance with

---

[7] The legislative history of 42 U.S.C. § 1320a-7(i) evidences that Congress's sole purpose in enacting that provision was its concern that certain providers who pleaded guilty to program-related offenses within the meaning of Section 1128(a) of the Act would not be subject to exclusion if the term "conviction" was limited to the entry of a judgment of conviction by a court. H.R. Rep. No. 99-727, at * 75 (1986), as reprinted in 1986 U.S.C.C.A.N. 3607, 3665. The legislative history of that provision is as follows:

"[T]he Committee bill defines the term 'convicted' for purposes of the exclusion of individuals convicted of program-related criminal offenses under section 1128(a) of the Act. An individual is considered to have been convicted of a criminal offense when (1) a judgment of conviction has been entered in a local, State, or Federal Court, regardless of whether there is an appeal pending or whether the judgment or other record of conviction has been expunged; (2) there has been a finding of guilt by a Federal, State, or local court; (3) a plea of guilty or nolo contendere has been accepted by a Federal, State, or local court; or (4) the individual has entered into participation in a first offender, deferred adjudication, or other program where judgment of conviction has been withheld.

With respect to convictions that are 'expunged,' the Committee intends to include all instances of conviction which are removed from the criminal record of an individual for any reason other than the vacating of the conviction itself, e.g., a conviction which is vacated on appeal. The Committee wishes to emphasize that, if a conviction is overturned or vacated on appeal, the individual can no longer be excluded from the Medicare and Medicaid programs (unless, of course, he or she has been excluded on grounds independent of such conviction).

According to the Office of the Inspector General, about 10 [ten] percent of the criminal dispositions of cases of criminal abuse against Medicare or Medicaid cannot be the basis for an exclusion under current law. In FY [fiscal year] 1985, of 447 [four hundred forty-seven] criminal dispositions obtained by the State Medicaid fraud control units, 49 [forty-nine] convictions were found to be outside the scope of section 1128(a); accordingly,

13

the OIG's policy to impose an exclusion under Section 1128(a)(1) of the Act only after an individual has been sentenced, or the individual's case has otherwise been resolved at the trial level, in order to account for specific aggravating and/or mitigating factors, (Hughes Decl., R. 100-101), and was not otherwise inconsistent with the Act or implementing regulations, the Secretary's determination of when to impose the mandatory five (5) year exclusion was supported by substantial evidence and was not arbitrary and capricious.

2.      Claims Relating to the Timeliness of the Notice of Exclusion

---

there was no Federal exclusion from Medicare or Medicaid in these cases.

The principal criminal dispositions to which the exclusion remedy does not apply are the 'first offender' or 'deferred adjudication' dispositions. It is the Committee's understanding that States are increasingly opting to dispose of criminal cases through such programs, where judgment of conviction is withheld. The Committee is informed that State first offender or deferred adjudication programs typically consist of a procedure whereby an individual pleads guilty or nolo contendere to criminal charges, but the court withholds the actual entry of a judgment of conviction against them and instead imposes certain conditions of probation, such as community service or a given number of months of good behavior. If the individual successfully complies with these terms, the case is dismissed entirely without a judgment of conviction ever being entered.

These criminal dispositions may well represent rational criminal justice policy. The Committee is concerned, however, that individuals who have entered guilty or nolo pleas to criminal charges of defrauding the Medicaid program are not subject to exclusion from either Medicare or Medicaid. These individuals have admitted that they engaged in criminal abuse against a Federal health program and, in the view of the Committee, they should be subject to exclusion. If the financial integrity of Medicare and Medicaid is to be protected, the programs must have the prerogative not to do business with those who have pleaded to charges of criminal abuse against them."

H.R. Rep. No. 99-727, at * 75, 1986 U.S.C.C.A.N. 3607, 3665.  Thus, in enacting Section 1320a-7(i), Congress intended only to expand the scope of the exclusion statute, not to impose any time limit on the Secretary's discretion over when to implement an exclusion, as plaintiff suggests.

14

Plaintiff's claims that the Secretary did not provide him with notice of the exclusion within a reasonable time and that the exclusion is barred by the equitable doctrine of laches are without merit. While the Act requires that the OIG provide "reasonable notice" of an exclusion, 42 U.S.C. § 1320a-7(f)(1), and that the exclusion take effect twenty (20) days from the date of that notice, 42 U.S.C. § 1320a-7(c)(1), the timing of the exclusion is otherwise left to the discretion of the OIG, see 42 U.S.C. § 1320a-7(f)(1); 42 C.F.R. §§ 1001.2001-1001.2002; see also Connell v. Secretary of Health and Human Services, No. 05-cv-4122, 2007 WL 1266575, at * 4 (S.D.Ill. Apr. 30, 2007); Seide v. Shalala, 31 F.Supp.2d 466, 469 (E.D.Pa. 1998). Neither the Act nor its implementing regulations set any deadline within which the OIG must impose an exclusion. See Seide, 31 F.Supp.2d at 469.

Like the plaintiff in this case, the plaintiff in Seide admitted that he had been convicted of a criminal offense which triggered the mandatory five (5) year exclusion period set forth in Section 1128(a)(1) of the Act, but challenged as unreasonable the Secretary's delay in waiting twenty-six (26) months to give plaintiff notice of the exclusion, thereby effectively extending the exclusion to seven (7) years. 31 F.Supp.2d at 468. The district court affirmed the ALJ's decision as supported by substantial evidence on the basis that there was no deadline within which the OIG was required to act to impose the exclusion.

To the contrary, the district court in Connell, 2007 WL 1266575, at * 5, held that the ALJ's decision that he lacked authority to evaluate the OIG's exercise of discretion in imposing the mandatory exclusion prevented any meaningful judicial review and remanded the case to the Secretary to "determine the appropriate person or persons to conduct the analysis [of the applicable legal standard to be applied to challenges to the timeliness of an exclusion] and make

15

a new decision." Nonetheless, and inexplicably, the district court specifically recognized that the ALJ's review of the OIG's decision to implement a mandatory exclusion was limited "solely to determin[ing] whether the basis for the imposition of the sanction exists." Id.[8]

Even assuming that Section 405(g), as incorporated by Section 1128(f)(1), requires the Secretary to act within a reasonable period of time in implementing an exclusion, see, e.g. White v. Mathews, 559 F.2d 852, 859-860 (2d Cir. 1977) (holding that Congress did not abandon the requirement of reasonableness by its decision not to impose precise time limits within which the Secretary must act pursuant to 42 U.S.C. § 405(b)); Hall v. Bowen, 830 F.2d 906, 910 (8th Cir. 1987) (holding that although 42 U.S.C. § 405(b) does not provide a mandatory deadline in which the Secretary must act to exclude the plaintiff from participation in the Medicare and Medicaid programs, the Secretary must provide a hearing within a reasonable time); 5 U.S.C. § 555(b), the Secretary acted reasonably in deferring implementation of the exclusion in this case until after plaintiff was sentenced on his convictions. The implementing regulations specifically provide that one of the aggravating factors that may be considered in determining the period of exclusion is that "[t]he sentence imposed by the court included incarceration," 42 C.F.R. § 1001.102(b)(5), and that two of the mitigating factors that may be considered upon presentation of an aggravating factor are that "[t]he record in the criminal proceedings, *including sentencing documents*, demonstrates that the court determined that the individual had a mental, emotional or physical

---

[8] Moreover, the Connell court's reliance on Seide for the proposition that "[w]hen the timing of a decision is challenged, the Secretary must determine whether the Inspector General acted unreasonably under the circumstances" is questionable. As already noted, the Seide court held only that there was no deadline within which the OIG must act to implement a mandatory exclusion and, as a result, found the ALJ's decision to be supported by substantial evidence. 31 F.Supp.2d at 469.

16

condition before or during the commission of the offense that reduced the individual's culpability" and that the provider cooperated with federal or state officials and that cooperation resulted in, *inter alia*, other convictions, exclusions or investigations.  42 C.F.R. §§ 1001.102(c)(2) and (3) (emphasis added).  Although plaintiff contends that the Secretary could have ascertained his cooperation prior to sentencing, under the regulatory scheme, plaintiff's cooperation became relevant as a mitigating factor only after the aggravating factors, including any sentence of incarceration, could be assessed.   Accordingly, the Secretary clearly acted reasonably, and in accordance with the Act and implementing regulations, in awaiting the court's sentencing of plaintiff before implementing the mandatory exclusion.

Moreover, the Secretary's eight (8) month delay in implementing the exclusion following plaintiff's sentencing was not inherently unreasonable given, *inter alia*, the time needed to provide plaintiff with notice and an opportunity to respond to the notice of intent to exclude, and for the Secretary to consider plaintiff's response to the notice of exclusion in light of his considerable caseload.

3.    Due Process Claim

Plaintiff's claim that the delayed notice of exclusion, and the Act and implementing regulations under which it was issued, violated his due process rights also fails.

A due process claim is only cognizable if there is a protected property or liberty interest at stake. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  There is no property interest in continued participation in Medicare,

17

Medicaid or any other federal health care program.  See, e.g. 701 Pharmacy Corp. v. Perales, 930 F.2d 163, 170 (2d Cir. 1991); Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 176 (2d Cir. 1991).

Nor was plaintiff deprived of a protected liberty interest.  To the extent plaintiff bases his due process claim upon damage to his reputation, honesty and integrity resulting from the exclusion, damage to reputation alone is insufficient to support a due process claim based upon deprivation of a liberty interest.  See Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).  In order to state a claim based upon deprivation of a liberty interest involving an individual's reputation, some other tangible interest, such as employment, must be implicated. Id.  Although the Second Circuit has not addressed the issue of whether the exclusion of a health care provider from participation in Medicare, Medicaid or other federal health care program implicates a liberty interest, at least one court that has considered this issue has held that since a source of the provider's income realized from reimbursement from Medicare, Medicaid or other federal health care program would be discontinued, and other privileges of the provider's employment, i.e., hospital staff privileges, may also be threatened, a tangible interest other than the provider's reputation was at risk sufficient to implicate a protected liberty interest.  Koerpel v. Heckler, 797 F.2d 858, 865 (10th Cir. 1986).

However, in order to demonstrate the deprivation of a protected liberty interest based upon damage to one's reputation, "the accuracy of the charge must be contested."  Erickson v. United States ex rel. Dept. of Health and Human Services, 67 F.3d 858, 863 (9th Cir. 1995); see also Kelly Kare, 930 F.2d at 177 (holding that in order to prevail on a stigma-plus due process claim, the plaintiff must establish that the information was stigmatizing, false and publicized by the defendant).  Since plaintiff does not dispute that he was convicted of a criminal offense(s)

18

"related to the delivery of an item or service" under the Medicare program, he cannot establish, as a matter of law, that his exclusion from participation in the Medicare, Medicaid and other federal health care programs based upon such convictions deprived him of a protected liberty interest based upon damage to his reputation. See, e.g. Senape v. Constantino, No. 93 Civ. 5182, 1995 WL 29502, at * 8 (S.D.N.Y. Jan. 26, 1995), aff'd on other grounds, 99 F.3d 401 (2d Cir. 1995) (holding that, as a matter of law, the plaintiff could not maintain a due process claim based upon the deprivation of a liberty interest by asserting that the publication of a list of persons who had been excluded as providers from the Medicaid Program and for whose services other providers would not be entitled to Medicaid reimbursement damaged his reputation and stigmatized him since, inter alia, the list did not portray the plaintiff in a "false light.")

To the extent that plaintiff bases his due process claim on the Secretary's deprivation of his "right to choose one's field of private employment," Conn v. Gabbert, 526 U.S. 286, 291-292, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999), that claim also fails because such a right is only implicated where there has been "a complete prohibition on the right to engage in a calling, and not [a] sort of brief interruption," Id. As the Supreme Court noted, "it would stretch the [liberty interest] concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (internal quotations and citation omitted). Plaintiff admits that his license to practice medicine in the State of New Jersey has been reinstated. (See "Plaintiff's Response in Opposition" [Plf. Opp.], ¶¶ 11-12). Indeed, plaintiff does not argue that he is entirely prevented from practicing medicine as a result of the exclusion, only that his "employment opportunities are greatly curtained [sic]." (Plf. Opp., ¶ 12). Thus, although

19

plaintiff will not be reimbursed for any services he may provide under the Medicare or Medicaid programs and, as a result, he may not be entitled to hospital privileges, he is free to otherwise practice medicine, as least in the State of New Jersey. Accordingly, the Secretary's exclusion of plaintiff from Medicare, Medicaid and any other federal health care program did not deprive plaintiff of a protected liberty interest. See, e.g. Guzman v. Shewry, 552 F.3d 941, 954-955 (9th Cir. 2009); Senape, 1995 WL 29502, at * 9.

In any event, plaintiff clearly received all the process that he was due with respect to the exclusion. "The essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it. " Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotations and citation omitted). In order to determine the form of notice and hearing, the court must balance the following factors: (1) the government's interest; (2) the plaintiff's interest; and (3) "the risk of erroneous deprivation and the value of additional safeguards." Perry v. McDonald, 280 F.3d 159, 174 (2d Cir. 2001) (citing Mathews, 424 U.S. at 335, 96 S.Ct. 893).

Plaintiff was provided with notice of intent of his exclusion, which, *inter alia*, advised him of the basis for, and consequences of, the exclusion and gave him thirty (30) days within which to respond before the Secretary made a final determination. Thus, plaintiff was afforded with notice and an opportunity to be heard, of which he took advantage, sufficient to satisfy due process requirements.

Moreover, the "risk of an erroneous deprivation" of any protected liberty interest is remote, since plaintiff was afforded "ample process to assert his innocence" during the criminal

20

proceedings in the United States District Court for the Southern District of New York. Erickson, 67 F.3d at 863 (quoting Ram v. Heckler, 792 F.2d 444, 447 (4th Cir. 1986)). In addition, "the government has a 'compelling' interest in preventing, among other things, the waste of public resources caused by improper acts by physicians under Medicare," Erickson, 67 F.3d at 863 (citing Cassim v. Bowen, 824 F.2d 791, 797 (9th Cir. 1987)), which outweighs plaintiff's interest in preventing his exclusion from the Medicare program and the resulting stigmatization such exclusion may have on his reputation and employment opportunities. Id. Accordingly, plaintiff's due process claim is without merit.

III.   CONCLUSION

The Secretary's motion for judgment on the pleadings is granted and the Secretary's decision is affirmed. The Clerk of the Court is directed to enter judgment in favor of the Secretary and to close this case.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 21, 2009
       Central Islip, New York

21

Copies to:

Nathan L. Dembin & Associates, P.C.
225 Broadway, Suite 1400
New York, New York 10007
Attn:   Nathan Dembin, Esq.
        Ellen S. Davis, Esq.

United States Attorney's Office
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722-4454
Attn:   Robert B. Kambic, A.U.S.A.
        Thomas A. McFarland, A.U.S.A.