UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDA LEE FIGUEROA,

    Plaintiff,

v.   Case No.  8:23-cv-2236-SPF

SECRETARY OF THE DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

    Defendant.
_____/

## ORDER

Plaintiff Brenda Lee Figueroa seeks review of a final decision of Defendant, Secretary of the Department of Health and Human Services (the "Secretary") that excluded her from participation in Medicare, Medicaid, and all other federal health care programs for five years pursuant to 42 U.S.C. § 1320a-7(a)(3).  Both Plaintiff and the Secretary have moved for summary judgment (Docs. 27, 29).  Because the Secretary's final decision is supported by substantial evidence, applied the correct legal standards, and was within his statutory authority, the Secretary's decision is affirmed.

    **I.**    **Background**

The underlying facts are undisputed.  In May 2013, Plaintiff established Mutual Family Health, LLC ("MFH") operating as a medical clinic for individuals who received health care benefits through the U.S. Department of Labor's ("DOL") Office of Workers' Compensation Program ("OWCP") (Tr. 4, 204).  On December 17, 2019, Plaintiff, who is a registered nurse, was indicted for health care fraud in the Federal Employees' Compensation

Act ("FECA") program (Tr. 123). On January 21, 2020, the DOL issued a Notice of Suspension informing Plaintiff that she was suspended from federal government contracting and from directly and indirectly receiving benefits of federal assistance programs (Tr. 130–32). The notice provided that her suspension would remain in place through the conclusion of any debarment proceeding that may be initiated against her (*Id.*).

On February 11, 2020, a federal grand jury returned a superseding indictment against Plaintiff for eleven counts of health care fraud under 18 U.S.C. § 1347 and three counts of aggravated identity theft under 18 U.S.C. § 1028A (Tr. 176–85). Plaintiff ultimately pleaded guilty to two felony counts of health care fraud on July 7, 2021 (Tr. 186–208). As part of the plea agreement, Plaintiff admitted that she submitted and caused to be submitted false and fraudulent claims to the DOL's OWCP, which resulted in OWCP paying at least $334,874.00 to Plaintiff's business (Tr. 203–06). On December 14, 2021, Plaintiff was sentenced to five years' probation on each count to run concurrently (Tr. 209–10). The next day, the court entered judgment against Plaintiff (Tr. 168–76).

On December 21, 2021, the DOL issued a Notice of Proposed Debarment informing Plaintiff that the DOL intended to debar her from federal government contracting for three years (Tr. 14, 155–56; Doc. 29-1). On March 28, 2022, Plaintiff was debarred from all federal programs for a period of three years retroactive to the date of her initial suspension, January 21, 2020 (Tr. 155–56). Consequently, Plaintiff's debarment period ran from January 21, 2020, through January 20, 2023 (*Id.*).

On August 31, 2022, Defendant, through the Office of the Inspector General of the Department of Health and Human Services ("IG"), notified Plaintiff that she would be excluded from participation in all federal health care programs based on her felony health

care fraud convictions for the statutory minimum of five years pursuant to 42 U.S.C. § 1320a-7(a)(3) and 42 C.F.R. § 1001.101(c) (Tr. 165).  Plaintiff's exclusion began 20 days after the notice on September 20, 2022 (*Id.*).

On November 3, 2022, Plaintiff initiated an administrative appeal of her exclusion and requested a hearing (Tr. 11–13).  At the administrative level, Plaintiff argued that the IG's selection of August 31, 2022 as her exclusion date was arbitrary and capricious (Tr. 71).  The exclusion was affirmed by an administrative law judge ("ALJ") on May 5, 2023 (Tr. 1–8).  In the decision, the ALJ specifically noted that he had no authority to modify the IG's selection of an effective date for her exclusion (Tr. 7–8); *see also* 42 C.F.R. § 1001.2007(a) (stating that excluded parties may request a hearing before an ALJ only on the issues of whether the basis for the imposition of the sanction exists and the length of the exclusion is unreasonable).  Plaintiff then appealed to the Departmental Appeals Board of the Department of Health & Human Services, who declined review (Tr. 9–10).  On October 3, 2023, Figueroa timely filed a complaint in this Court challenging the Secretary's final agency decision (Doc. 1).

## II.     Legal Framework

The Social Security Act authorizes the IG to exclude certain individuals and entities from participation in federal health care programs, including Medicare and Medicaid. 42 U.S.C. § 1320a-7. The Act mandates the exclusion from participation in any federal health care programs of individuals convicted of a criminal offense falling under one or more of four specified categories for a minimum of five years. 42 U.S.C. §§ 1320a-7(a), 1320a-7(c)(3)(B); 42 C.F.R. § 1001.102(a).  In particular, the IG is required to exclude from participating in Federal health care programs, any individual who has been convicted of a criminal offense related to "the delivery of a health care item or service or with respect to any

act or omission in a health care program . . . operated by or financed in whole or part by any Federal, State, or local government agency." 42 U.S.C. § 1320a-7(a)(3); 42 C.F.R. § 1001.101(c). For purposes of mandatory exclusion, an individual is convicted when a judgment of conviction has been entered against the individual by a Federal, State, or local court, or when a plea of guilty or nolo contendere by the individual or entity has been accepted by a Federal, State, or local court. 42 U.S.C. § 1320a-7(i)(1), (3); 42 C.F.R. § 1001.2. An exclusion becomes effective "at such time and upon such reasonable notice to the public and to the individual or entity excluded as may be specified in regulations." 42 U.S.C. § 1320a-7(c)(1). The regulations, in turn, provide that an exclusion takes effect twenty days after the date of the Inspector General's notice of exclusion. *See* 42 C.F.R. § 1001.2002(b).

An individual excluded from federal health care programs may file a request for a hearing before an ALJ. 42 C.F.R. § 1005.2. The only issues the ALJ can determine on appeal are whether the "basis for the imposition of the sanction exists" and the "length of the exclusion is unreasonable." 42 C.F.R. § 1001.2007(a); *cf. Markoff v. The Inspector General*, DAB CR538, 1998 WL 479297, at *9 (H.H.S. June 19, 1998) (stating that the ALJ cannot "move the effective date of the exclusion back to the date when Petitioner surrendered his license"). Either party may then appeal the ALJ's decision to the Departmental Appeals Board, and the Board's decision then constitutes the final decision of the Secretary. 42 C.F.R. § 1005.21(a), (j).

Any individual excluded from federal health care programs under 42 U.S.C. § 1320a-7 is entitled to judicial review of the Secretary's decision as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1320a-7(f)(1). Pursuant to 42 U.S.C. § 405(g), judicial review of the Secretary's decision is limited to whether there is substantial evidence in the record to support the findings

of the Secretary, and whether the correct legal standards were applied. *Gulfcoast Med. Supply, Inc. v. Sec'y of Health & Human Servs.*, 468 F.3d 1347, 1350 n.4 (11th Cir. 2006) (citation omitted). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). While the Court reviews the Secretary's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III. Discussion

The issue on appeal before the Court is narrow. Plaintiff does not dispute that she was convicted of a qualifying offense and is therefore subject to the mandatory five-year exclusion provided by 42 U.S.C. §§ 1320a-7(a)(1), (c)(3)(B). As a result, there is necessarily substantial evidence to support the Secretary's determination. Instead, Plaintiff essentially contends that the proper legal standard was not applied. Namely, Plaintiff challenges the effective date of her exclusion, arguing that it should have begun on January 20, 2020, the date her DOL debarment began,[1] and that the IG's decision to send Plaintiff's notice of exclusion in August 2022 was arbitrary and capricious.

First, Plaintiff argues that, after the U.S. Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–413 (2024), the Court is not required to defer to the IG's position that it has unfettered discretion in determining the effective date of Plaintiff's exclusion. In *Loper Bright*, the Supreme Court eliminated *Chevron* deference and held that

---

[1] Plaintiff alternatively requests that the Court find that her exclusion began on any other date earlier than September 20, 2022.

5

courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous" and instead "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412–13 (overruling *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

To backtrack, 42 U.S.C. § 1320a-7(c) provides as follows:

> (1) An exclusion under this section or under section 1320a-7a of this title shall be effective at such time and upon such reasonable notice to the public and to the individual or entity excluded as may be specified in regulations consistent with paragraph (2).
>
> (2)(A) Except as provided in subparagraph (B), such an exclusion shall be effective with respect to services furnished to an individual on or after the effective date of the exclusion.

42 U.S.C. § 1320a-7(c). Considering this delegation of authority, Defendant promulgated 42 C.F.R. § 1001.2002, which states in relevant part:

> (a) Except as provided in § 1001.2003, if the OIG determines that exclusion is warranted, it will send a written notice of this decision to the affected individual or entity.
>
> (b) The exclusion will be effective 20 days from the date of the notice.
>
> (c) The written notice will state—
>
>> (1) The basis for the exclusion;
>>
>> (2) The length of the exclusion and, where applicable, the factors considered in setting the length;
>>
>> (3) The effect of the exclusion;
>>
>> (4) The earliest date on which the OIG will consider a request for reinstatement;
>>
>> (5) The requirements and procedures for reinstatement; and
>>
>> (6) The appeal rights available to the excluded individual or entity.

42 C.F.R. § 1001.2002.

Plaintiff argues that, because the statute is silent on when the exclusion should begin, courts may no longer defer to the agency's position that it has discretion on when to send the notice of exclusion. Plaintiff's argument here is not entirely clear. While she raises *Loper Bright*, it is not immediately apparent what specific agency action Plaintiff is challenging. In her motion Plaintiff states that, after *Loper Bright*, the Court is "not required to defer to the agency's interpretation or its position that it has unfettered discretion in setting a start date for exclusion," then immediately states that the "exclusion period is set not by statute, but by regulation by the agency," that the Court "must not defer to the arbitrary date of September 20, 2022 that Defendant has set," and, inexplicably, that "courts should not defer to agencies reading into statutes words that do not exist." (Doc. 29 at 5–6). In response to Defendant's motion, Plaintiff again states that the "exclusion period is set not by statute, but by regulation," that a court "must no longer defer to an agency's interpretation under the *Chevron* doctrine," that the "statute here is not ambiguous regarding effective date of when exclusion begins, it is completely silent [and thus, there] can be no deference to the date selected by the Defendant," and that any cases stating the IG has discretion in setting the exclusion date are no longer persuasive after *Loper Bright* (Doc. 30 at 3–4).

Thus, it is unclear if she intends to argue that (1) because 42 U.S.C. § 1320a-7(c) is silent as to when the notice of exclusion must be sent, the Court need no longer defer to the Secretary's "interpretation" that the statute provides the IG with discretion on this matter; (2) 42 C.F.R. § 1001.2002 is arbitrary, capricious, or manifestly contrary to the statute because it improperly provides the IG with "unfettered discretion" in determining when to send the notice of exclusion; (3) the Secretary's claim that 42 C.F.R. § 1001.2002 provides the IG with discretion on when to send the notice of exclusion is unreasonable such that the Court would

7

need to analyze the agency's interpretation of the regulation, potentially engaging in *Auer* deference;[2] or (4) the Secretary's decision to send Plaintiff's notice of exclusion over a year after the date of her conviction was arbitrary and capricious.[3] Regardless of Plaintiff's intent, each of these arguments fail.

First, 42 U.S.C. § 1320a-7(c) is not silent with respect to the specific issue such that *Chevron* deference would have applied. *See Chevron*, 467 U.S. at 843 ("If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own interpretation of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."). The statute clearly states that an exclusion will be effective "at such time and upon such reasonable notice . . . to the individual . . . excluded as may be specified in regulations consistent with paragraph (2)." 42 U.S.C. § 1320a-7(c)(1). This is a clear delegation of authority to the agency to promulgate regulations that specify when the exclusion will take effect. And while the statute itself might not expressly state a

---

[2] When a court engages in *Auer* deference, it defers to an agency's reading of its own genuinely ambiguous regulation. *See Kisor v. Wilkie*, 588 U.S. 558, 563, 574 (2019) (clarifying proper application of *Auer* doctrine and reaffirming its "important role in construing agency regulations") (discussing *Auer v. Robbins*, 519 U.S. 452 (1997)); *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1179 (11th Cir. 2021). While after *Loper Bright* courts no longer defer to an agency's interpretation of an ambiguous statute, *Auer* deference remains intact because it applies to an agency's interpretation of its own regulation, not a statute. *See United States v. James*, 135 F.4th 1329, 1334 n.1 (11th Cir. 2025) ("Although perhaps *Loper Bright* has the potential to cast doubt on [*Auer* deference] in future cases, it dealt with agency interpretations of ambiguous statutes, not agency interpretations of their own regulations . . . [t]hus, it is not squarely on point and has no bearing on the legal framework we rely on here.").

[3] Plaintiff appears to be under the impression that *Chevron* required courts to defer to any and all actions taken by agencies. As explained in this section, this was not the case.

specific time period in which the notice of exclusion must be sent, the concept of "silence" for purposes of *Chevron* deference is distinct from an express delegation of authority to the agency. Indeed, the *Chevron* decision itself noted that there would be no deference in these circumstances:

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

467 U.S. at 843–44.

The *Loper Bright* decision did not alter the principle that regulations enacted pursuant to express delegations of authority are given controlling weight unless arbitrary, capricious, or contrary to the statute, it only announced that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 413. As the decision makes clear, "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring the agency acts within it." *Id.*; *see also Wright v. Everson*, 543 F.3d 649, 654 (11th Cir 2008) ("If Congress explicitly leaves a gap for the agency to fill, 'there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.' A resulting regulation is reviewed only to see if it is arbitrary, capricious, or manifestly contrary to the statute.") (quoting *Chevron*, 467 U.S. at 843–44) (citations omitted).

As a result, *Chevron* deference is not (and never was) implicated such that the *Loper Bright* decision would alter this Court's analysis. *Cf. Dep't of Labor v. Am. Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 685 (S.D. Ohio 2025) ("Since the delegation of statutory authority

9

to DOL is clear and unambiguous, the *Loper Bright* decision does not impact the outcome here."); *Baxter v. Becerra*, No. 3:23-cv-92, 2024 WL 627262, at *7 n.7 (E.D. Va. Feb. 14, 2024) ("Because the Court finds no ambiguity in 42 U.S.C. § 1320a-7(a)(1) on any of the presented questions and instead finds that the 'traditional tools of statutory construction' all show that the Secretary's reading in this case is correct, the Court 'give[s] effect to the unambiguously expressed intent of Congress' and does not rely on *Chevron* deference in deciding this matter.") (quoting *Chevron*, 467 U.S. at 842–43, 843 n.9). Therefore, any argument that the Court need no longer defer to the Secretary's "interpretation" that the statute provides it with discretion on when to send the notice of exclusion is without merit.

Through 42 U.S.C. § 1320a-7(c)(1), Congress clearly empowered DHHS to enact regulations specifying the time and notice requirements for exclusions under 42 U.S.C. § 1320a-7(a)(1). 42 U.S.C. § 1320a-7(c)(1). Pursuant to this authority, the agency enacted 42 C.F.R. § 1001.2002, which requires written notice to the individual and provides that the exclusion will be effective 20 days from the date of the notice. 42 C.F.R. § 1001.2002. This was clearly within the bounds of the delegated authority. Indeed, outside of the general statement that the Court need not defer to the agency's position that it has discretion on when to send the notice of exclusion, Plaintiff has provided no argument or authority to suggest that the regulation is arbitrary, capricious, or manifestly contrary to the statute. As a result, this Court must "respect the delegation, while ensuring the agency acts within it." *Loper Bright*, 603 U.S. at 413. For the reasons explained below, the Court finds that the IG did.

Considering that 42 C.F.R. § 1001.2002 does not provide a time frame in which the notice of exclusion must be sent, the Secretary claims that the IG has discretion on when to send the notice of exclusion. Courts have consistently agreed that this is the case. *See, e.g.*,

10

*Meeks v. Sec'y of Dep't of Health & Hum. Servs.*, No. 1:24-cv-022, 2025 WL 1191584 at *4 (S.D. Ga. Apr. 24, 2025) ("Plaintiff's argument that the exclusion period should have begun in September 2019 is unavailing, as the determination of when an exclusion is imposed is within the discretion of the IG."); *Deshikachar v. Becerra*, No. 23-10465, 2024 WL 4525296, at *2 (E.D. Mich. Aug. 26, 2024) ("The Court finds that the Secretary, and the IG by extension, have discretion under 42 U.S.C. § 1320a-7 to decide when to send notice.  That provided discretion is a congressional determination, and unless [the plaintiff] can cite some legal authority that establishes that the statute is unconstitutional [the plaintiff], the Court, and the agency are bound by it."); *Marshall v. Sec'y, Dep't of Health & Hum. Servs.*, No. 3:17-cv-1382, 2019 WL 2895668, at *4 (D. Conn. Mar. 11, 2019) ("The Act and the regulations . . . give the Inspector General discretion to determine the timing of the imposition of an exclusion."); *Seide v. Shalala*, 31 F. Supp. 2d 466, 469 (E.D. Pa. 1998) ("'The Inspector General has the discretion to determine when to impose an exclusion.'") (quoting *Martin v. The Inspector General*, DAB CR529, 1998 WL 248066 (H.H.S. Apr. 16, 1998)).[4]  And while Plaintiff takes issue with this conclusion, she does not argue that the regulation is ambiguous or otherwise meaningfully challenge the Secretary's interpretation of the regulation.[5]  Thus, because the IG has discretion on when to send the notice of exclusion, the Court finds that the agency acted within its authority in sending Plaintiff's notice of exclusion on August 31, 2022.

---

[4] There is no indication—presumably for the reasons set forth above—that any of these courts relied on *Chevron* deference to reach this conclusion.  Thus, the *Loper Bright* decision has no impact on the persuasiveness of these cases.

[5] As set forth above, even if the regulation were genuinely ambiguous, the Court would be required to engage in *Auer* deference and defer to the Secretary's reasonable reading of the regulation.

Finally, the Court turns to whether the IG's decision to send Plaintiff's notice of exclusion on August 31, 2022 was arbitrary and capricious.[6] Plaintiff argues that the selection of this date was arbitrary because her guilty plea was the triggering event for her exclusion, and the guilty plea was filed in federal court on June 25, 2021, nearly fifteen months before her exclusion became effective. While Plaintiff's guilty plea was filed in federal court on June 25, 2021 (Tr. 127), the Court did not accept her guilty plea until July 7, 2021 (Tr. 127, 208), and a criminal judgment was not entered against her until December 15, 2021 (Tr. 129, 168–69). And, as set forth above, the Act defines "conviction" for purposes of the mandatory exclusion requirement as "when a judgment of conviction has been entered against the individual by a Federal, State, or local court," or "when a plea of guilty or nolo contendere by the individual or entity has been *accepted* by a Federal, State, or local court." 42 U.S.C. § 1320a-7(i)(1), (3); 42 C.F.R. § 1001.2. As a result, the IG sent Plaintiff's notice of exclusion approximately fourteen months after the court's acceptance of Plaintiff's guilty plea and less than nine months after Plaintiff's judgment of conviction.

And if "the inclusion of clause (1) in Section 1320a-7(i) is not to be considered superfluous, Congress must have intended that the Inspector General could choose to exclude the individual or entity upon the occurrence of one of the predicates to the entry of a judgment

---

[6] It is unclear whether there is any legal basis for the Court to consider this argument, considering the standard of review applicable in this case. While Plaintiff references the APA's arbitrary and capricious standard throughout her filings, she never argues that the Court should apply this standard. In fact, Plaintiffs filings do not address the applicable standard of review at all. Because there is at least some authority suggesting that the APA could also apply, and because it ultimately is not determinative in this case, the Court will assume it applies here. *See Kogan v. Becerra*, No. 21-10856, 2023 WL 8253074, at *3 n.5 (D.N.J. Nov. 29, 2023); *Lilia Gorovits, M.D., P.C. v. Becerra*, Civ. No. 20-1850, 2021 WL 1962903, at *3 n.6 (E.D. Pa. May 17, 2021) ("The distinction between § 405 (g) and the APA standard is not clear, however, some courts have also held that between the two standards, 'it probably makes no difference.'") (citation omitted).

12

of conviction that are set forth in clauses (2) and (3) or in the alternative, could choose to wait until there is a judgment of conviction." *Marshall*, 2019 WL 2895668, at *5; *see also Singhvi v. Inspector General of Dep't of Health & Hum Servs.*, No. 2:08-cv-659, Doc. 33 at 13 n.7 (E.D.N.Y. Sept. 21, 2009) (explaining that the "legislative history of 42 U.S.C. § 1320a-7(i) evidences that Congress's sole purpose in enacting that provision was its concern that certain providers who pleaded guilty to program-related offenses within the meaning of Section 1128(a) of the Act would not be subject to exclusion in the term 'conviction' was limited to the entry of a judgment of conviction by a court.") (citing H.R. Rep. No. 99-727, at *75 (1986), as reprinted in 1986 U.S.C.C.A.N. 3607, 3665).

And because "the length of an exclusion can be more than five years if certain aggravating factors are present, and if any of these aggravating factors are present, enumerated mitigating factors may be considered, it would be reasonable for the Inspector General to wait until he or she has the benefit of all of the information that may come to light during the sentencing process before deciding on the length of the exclusion." *Marshall*, 2019 WL 2895668, at *5; *see also* 42 C.F.R. § 1001.102.  By way of example, one of the aggravating factors that may be considered is that "[t]he sentence imposed by the court included incarceration," 42 C.F.R. § 1001.102(b)(5), and one of the mitigating factors that may be considered upon presentation of an aggravating factor is that "[t]he record in the criminal proceedings, *including sentencing documents,* demonstrates that the court determined that the individual had a mental, emotional or physical condition before or during the commission of the offense that reduced the individual's culpability." 42 C.F.R. § 1001.102(c)(2) (emphasis added).

13

As a result, the Court finds it appropriate to characterize the delay in this case as a period of less than nine months. *See Marshall*, 2019 WL 2895668, at *6 (where the plaintiff's exclusion began over five years after acceptance of guilty plea and nineteen months after judgment of conviction, it was more appropriate to characterize the delay as nineteen months). Considering the foregoing, the Court does not find a delay of less than nine months to be arbitrary and capricious. As the Secretary points out, many courts have upheld similar and longer delays. *See Meeks*, 2025 WL 1191584 at *4 (delay of thirty-one months); *Deshikachar*, 2024 WL 4525296, at *2 (delay of approximately eleven months); *Marshall*, 2019 WL 2895668, at *6 (delay of nineteen months); *Seide*, 31 F. Supp. 2d at 467 (delay of twenty months); *Singhvi v. Inspector General of Dep't of Health & Hum Servs.*, No. 2:08-cv-659, Doc. 33 at 17 (delay of eight months was not unreasonable). Indeed, it makes sense that there would be a notable delay between the judgment of conviction and the issuance of the notice of exclusion, as this "is not a mere ministerial act. Rather, the Inspector General must make a determination as to the appropriate length of an exclusion, and to do so the Inspector General is required to gather and evaluate the relevant information." *Marshall*, 2019 WL 2895668, at *6; *see also Deshikachar*, 2024 WL 4525296, at *3 ("Agencies have limited resources and may not be able to accommodate the type of plan that Deshikachar envisions. The Court is not in a position and does not have the authority to alter these policy determinations without a legal basis to do so.").

Nonetheless, Plaintiff argues that her exclusion date is arbitrary because it should have been made retroactive to January 20, 2020, the date Plaintiff's DOL suspension and debarment began. As the Secretary points out, "[t]here is no legal authority that would have permitted—let alone required—the IG to make the effective date of Figueroa's exclusion

retroactive to the date of her suspension and debarment by DOL." (Doc. 27 at 2). The Act plainly states that an "exclusion shall be effective with respect to services furnished to an individual *on or after the effective date of the exclusion*." 42 U.S.C. § 1320a-7(c)(2)(A) (emphasis added). And the regulation provides that the effective date of the exclusion is twenty days after the IG sends the notice of exclusion. 42 C.F.R. § 1001.2002. Thus, exclusions cannot be made retroactive. *See also Ali v. U.S. Dep't of Health & Hum. Servs.*, No. 21-cv-12365, 2022 WL 3130227, at *4 (E.D. Mich. Aug. 4, 2022) ("Plaintiff's exclusion became effective twenty days from the date of the notice, or on August 20, 2020. The regulation does not provide for a different or retroactive start date.") (citations omitted); *Marshall*, 2019 WL 2895668, at *4 ("The Act and the regulations require mandatory exclusion for a minimum of five years, do not allow for exclusions to be imposed retroactively and give the Inspector General discretion to determine the timing of the imposition of an exclusion.").

Plaintiff responds by pointing to 42 U.S.C. § 1320a-7(b)(5), which deals with permissive exclusions, to argue that the IG could have excluded her earlier under this authority.[7] 42 U.S.C. § 1320a-7(b)(5) allows for permissive exclusion of an individual who has been suspended or excluded from participation in any federal program. While Plaintiff is correct that a legal basis existed for the IG to exclude her in January 2020, this does not further her argument. Even if the IG excluded her earlier under 42 U.S.C. § 1320a-7(b)(5), this exclusion would be a separate exclusion based on her DOL suspension, not her underlying conviction. It would not have relieved the IG from subjecting Plaintiff to the mandatory five-

---

[7] Plaintiff apparently understands the Secretary's argument to suggest that the IG could not have suspended her before her criminal conviction. While this is also true (with respect to mandatory exclusions), this is distinct from the requirement that her mandatory exclusion take effect *after* the IG sends the notice of exclusion.

15

year exclusion required under 42 U.S.C. § 1320a-7(c)(3)(B) after Plaintiff was convicted of health care fraud.[8] As one court explained:

> An exclusion determination under § 1320a–7 is a two-step process. First, the Secretary must determine whether the mandatory provision applies. Under § 1320a–7(a) the Secretary shall exclude individuals who have been convicted of a program-related crime or who have been convicted of patient abuse. If the prerequisites of this section are met, the Secretary is directed by Congress to exclude that individual, and the issue of permissive exclusion becomes moot. It is only after the Secretary determines that the individual's conviction was not for a "program-related crime" that the permissive exclusion statute becomes relevant.

*Travers v. Sullivan*, 801 F. Supp. 394, 405 (E.D. Wash. 1992), *aff'd sub nom. Travers v. Shalala*, 20 F.3d 993 (9th Cir. 1994); *see also Baxter*, 2024 WL 627262, at *15 ("So, when one says that mandatory and permissive exclusion are 'mutually exclusive' categories, that is simply a reflection of the statutory text which only allows permissive exclusion *if mandatory exclusion does not apply* by the text of those provisions.") (emphasis in original). Simply put, the IG could not have made Plaintiff's exclusion retroactive, and as a result, it was not arbitrary for the IG not do so.

Plaintiff also raises various arguments related to the DOL's suspension and debarment of Plaintiff from federal programs. Plaintiff notes that, when considering both her DOL debarment and the IG exclusion at issue in this case, she will be effectively excluded from all healthcare programs for a period of seven-and-a-half years rather than the statutory minimum of five years. While the exact nature of Plaintiff's argument is somewhat murky, she appears

---

[8] The Court does not intend to suggest that it would be permissible for the IG to subject Plaintiff to both a permissive and mandatory exclusion in these circumstances. The Court merely emphasizes that Plaintiff's conviction rendered her exclusion mandatory.

16

to suggest that her DOL debarment should be treated as an exclusion by the IG because the impact of her debarment and exclusion is the same.[9]

The fact that the DOL debarment and the IG exclusion both had the effect of barring Plaintiff's participation in federal health care programs does not support the conclusion that the IG has improperly extended Plaintiff's exclusion period from five years to seven years. As the Secretary notes, suspension and debarment by the DOL and exclusion by the IG are distinct remedial tools that serve different purposes and are administered by different federal agencies under separate statutory authorities.

Plaintiff responds that she "cannot be punished twice civilly for the same act by the same sovereign, federal government," (Doc. 34 at 2). This argument fails for multiple reasons.[10] First, Plaintiff provides no authority to support this assertion. Moreover, exclusions and debarments are remedial in nature, not punitive. *See Manocchio v. Kusserow*, 961 F.2d 1539, 1542 (11th Cir. 1992) ("[S]ince the legislative intent of the exclusionary period is to protect the public, the sanction is remedial, not punitive."); 2 C.F.R. § 180.125 (stating that the purpose of the debarment and suspension system is to "protect the public interest" and that agencies may not exclude individuals "for the purposes of punishment"). In addition, the fact that 42 U.S.C. § 1320a-7(b)(5) expressly permits the IG to exclude individuals who have been "suspended or excluded from participation, or otherwise

---

[9] Plaintiff also appears to suggest that because the DOL was able to make Plaintiff's debarment retroactive, the IG should have made her exclusion retroactive. As explained above, however, the IG does not have authority to make an exclusion retroactive.

[10] The Court also notes that this argument, made for the first time in Plaintiff's Reply (Doc. 34), is inconsistent with the relief requested in this case. Plaintiff does not ask the Court to overturn her mandatory exclusion as improperly duplicative of her debarment, Plaintiff asks the Court to modify the effective date of her exclusion (Doc. 29 at 8; Doc. 34 at 2).

sanctioned" under other federal programs undercuts this argument.[11] 42 U.S.C. § 1320a-7(b)(5); *see also Marshall*, 2019 WL 2895668, at *8 (rejecting argument that the plaintiff's exclusion period was improperly extended from five years to seven years where CMS had revoked the plaintiff's Medicare billing privileges two years prior to the IG's notice of exclusion); *cf. Deshikachar*, 2024 WL 4525296, at *1 (finding no error where the plaintiff was precluded from billing Medicare and Medicaid as a condition of bond and later excluded from participating in any federal health care programs by the IG after sentencing). The ALJ persuasively articulated the rationale for this conclusion:

> I recognize Petitioner makes a somewhat more complex argument than that contemplated by the Act or its implementing regulations — that action taken by one federal agency under a certain authority should estop another federal agency from taking a similar action under a different authority. But Petitioner has provided no legal basis upon which I could rely to conclude Congress did not intend to permit such an outcome. It is in fact common for healthcare providers to be subject to actions taken by different governmental entities for the same conduct. The multitude of ways a healthcare practitioner can be subject to discipline or limitation of the ability to treat patients reflects the significant amount of trust placed in them. Petitioner's conduct here has unsurprisingly subjected to her to what can only be described as proportional consequences. To the extent Petitioner finds her exclusion period unfair, I observe the IG declined, for whatever reason, to apply at least two readily apparent aggravating factors in this case to extend Petitioner's period of exclusion beyond the statutory minimum period of five years.

(Tr. 107). Thus, Plaintiff's DOL debarment has no impact on her IG exclusion.

IV.   **Conclusion**

Considering the foregoing, the Court finds that the Secretary's decision applied the correct legal standards and is supported by substantial evidence. In addition, the Secretary's decision to send Plaintiff's notice of exclusion on August 31, 2022 was not arbitrary or

---

[11] Again, the suggestion that Plaintiff cannot be subject to both debarment by the DOL and exclusion by the IG is inconsistent with her earlier argument that the IG should have excluded her under this provision.

capricious. Accordingly, it is hereby ORDERED that:

(1) Plaintiff's Motion for Summary Judgment (Doc. 29) is DENIED.

(2) Defendant United States' Motion for Summary Judgment (Doc. 27) is GRANTED.

(3) The Secretary's decision is AFFIRMED. The Clerk is directed to enter judgment in favor of Defendant and close this case.

ORDERED in Tampa, Florida on August 13, 2025.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE